FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUN 25 P 4:11
CLERK
S.D. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| SHEILA B. GRANTHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 312-046 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Sheila B. Grantham ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff protectively applied for DIB on May 29, 2009, alleging a disability onset date of August 10, 2002. Tr. ("R."), pp. 62, 126-32. The Social Security Administration

---

[1] The Court takes judicial notice of the fact that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin as Defendant in this case.

denied Plaintiff's application initially, R. 62, and on reconsideration, R. 63. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 72, and the ALJ held a hearing on June 4, 2010, R. 36-59. Plaintiff, who was represented by counsel, testified on her own behalf at the hearing; the ALJ also heard testimony from Plaintiff's daughter, Tasha Grantham.[2] R. 41-52, 53-59. On August 24, 2010, the ALJ issued an unfavorable decision. R. 24-35.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 10, 2002, through her date last insured of September 30, 2008 (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, the claimant had the following medically determinable impairment: chronic left foot pain. [However,] [t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 C.F.R. § 404.1521 *et seq.*).

R. 29. Because the ALJ determined that Plaintiff did not have a severe impairment, the sequential evaluation process stopped, see 20 C.F.R. § 404.1520(a)(4)(ii), and the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from August 10, 2002, the alleged onset date, through September 30, 2008, the date last insured (20 C.F.R § 404.1520(c))." R. 32.

When the Appeals Council ("AC") denied Plaintiff's request for review, the

---

[2]A vocational expert was present at the hearing, but ultimately not called to testify. R. 36, 40.

Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal and remand, alleging that the Commissioner failed to properly weigh the opinions of Plaintiff's treating physicians[3] and to properly evaluate the subjective complaints and testimony of Plaintiff and her daughter. (See doc. no. 14 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits is supported by substantial evidence and should be affirmed. (See doc. no. 15 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial

---

[3]Contrary to the Court's instructions, (doc. no. 13, p. 3), Plaintiff failed to cite any legal authority in the section of her brief about the ALJ's consideration of her treating physicians. See Pl.'s Br., pp. 6-8. However, based on her assertion that the ALJ "failed to consider" these opinions, id. at 8, Plaintiff appears to contend that the ALJ did not properly weigh the opinions of her treating physicians when making his finding that Plaintiff did not have a severe impairment or combination of impairments. See Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*) ("The opinion of a treating physician is to be given substantial weight in determining disability.")

3

evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff contends that the ALJ erred in his determination at step two of the sequential

4

evaluation process that Plaintiff did not have a "severe impairment," defined as an impairment that significantly affects a claimant's ability to perform basic work activities.[4] 20 C.F.R. § 404.1521(a). Plaintiff, not the Commissioner, bears the "burden . . . of showing . . . , at step two that [s]he has a medically severe impairment or combination of impairments . . . ." Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); see also McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Unless the claimant can prove, as early as step two, that she is suffering from a severe impairment, she will be denied disability benefits.").

At the second step of the sequential evaluation process, if a claimant fails to carry this burden, the Commissioner must find there is no severe impairment and that the claimant is not disabled, without any consideration of age, education, and work experience. 20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from

---

[4]Basic work activities involve "the abilities and aptitudes necessary to do most jobs." Id. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

5

working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady v. Heckler, 724 F.2d 914, 920 (*per curiam*)). Under this test,

> an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*). With these principles in mind, the Court turns its attention to Plaintiff's arguments.

### A. ALJ Properly Weighed Opinions of Plaintiff's Treating Physicians

Plaintiff first contends that the ALJ "improperly disregarded" the opinions of three of her treating physicians – Mark Spivey, M.D.; Sidney P. Johnson, M.D., and the care providers at Pineland Mental Health – in making his severity determination at step two. Pl.'s Br., pp. 6-8. The Commissioner, on the other hand, contends that the ALJ properly rejected the opinions of these treating physicians, as they solely concerned treatment after Plaintiff's date last insured. Comm'r's Br., pp. 7-8. The Court finds that the Commissioner has the better argument.

In the Eleventh Circuit, a treating physician's opinion must be given substantial

6

weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). Generally, the Commissioner commits reversible error by failing to specify what weight is given to a treating physician's opinion and the reason for giving it no weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). Still, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Moreover, evidence, including opinion evidence from a treating physician, which occurs after the relevant time period and does not describe the claimant's condition during that period is properly rejected as irrelevant.[5] See Hughes v. Comm'r of Soc. Sec. Admin.,

---

[5] Entitlement to DIB depends on the existence of disability prior to the date last insured. See Chaney-Everett v. Astrue, 839 F. Supp. 2d. 1291, 1296 n.3 (S.D. Fla. 2012) (citing 42 U.S.C. §§ 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a)). The relevant time period under consideration by the ALJ in a DIB case thus ends with a claimant's date last insured. See Leonard v. Comm'r of Soc. Sec., 409 F. App'x 298, 300 (11th Cir. 2011) (*per curiam*).

7

486 F. App'x 11, 13-14 (11th Cir. 2012) (*per curiam*) (noting that three of a treating physician's opinions that did "not appear to be based upon [claimant's] mental and physical conditions within the time period at issue" before his date last insured "were not particularly relevant to whether [claimant] was disabled for purposes of DIB."); see also Lofgren v. Astrue, 1:06-CV-00143MPAK, 2008 WL 1323396, at *2 (N.D. Fla. Apr. 4, 2008) (ALJ's decision to reject two treating physicians' opinions was supported by substantial evidence where he did so because they were "rendered significantly after the insured status expired, and neither doctor gave [an] opinion as to [p]laintiff's condition as it existed during [p]laintiff's relevant period of disability."); cf. Boyd v. Heckler, 704 F.2d 1207, 1210, 1211 (11th Cir. 1983) (where plaintiff's insured status ended in 1975, treating physician's opinion explicitly stating the plaintiff had "certainly" been disabled since 1972, even though based on treatment beginning in 1977, was still entitled to significant weight "notwithstanding that he did not treat the claimant until after the relevant determination date.").

Here, it is undisputed that Plaintiff's date last insured was September 30, 2008. R. 27. The ALJ discussed the notably sparse medical evidence from the relevant time period in his decision, observing that Plaintiff had four visits with Ronald S. Reagin, D.P.M.,[6] about left heel pain in 2006 and 2007, as well as a visit with Dr. Johnson in 2002 about a sore throat and fever where she was diagnosed with pharyngitis. R. 204-10, 222. The ALJ noted that no functional limitations were indicated by Dr. Reagin or Dr. Johnson in their records of these visits, and that Plaintiff did not even allege at the hearing that she was limited by foot pain or pharyngitis. R. 32. In addition, the ALJ acknowledged that Plaintiff

---

[6]The ALJ refers to Dr. Reagin as "Dr. Ronald Regan" in his decision. See R. 30.

"complained of and began to receive treatment for depression in early 2009," but he also noted that the medical evidence of record indicated "no complaints or diagnosis related to a mental impairment" prior to that time. R. 31, 32. Therefore, the ALJ concluded that the record failed to indicate the presence of a severe impairment "from the alleged onset date August 11, 2002, to the claimant's date last insured, September 30, 2008." R. 32.

Plaintiff does not specifically take issue with the ALJ's consideration of the medical evidence from Dr. Reagin or Dr. Johnson's 2002 treatment notes. Rather, she makes two arguments for why the opinion evidence enumerated in her brief, all of which concerned treatment after her date last insured, pertained to the relevant time period and was thus entitled to greater weight. She first asserts that these treating physicians – Dr. Spivey, Dr. Johnson, and Pineland Mental Health – "specifically opined restrictions on [Plaintiff] establishing the presence of a severe impairment or a combination of impairments prior to [Plaintiff's] date last insured." Pl.'s Br., p. 7. Plaintiff's assertion is simply not supported by the medical records, however.

At a visit in February of 2009, Dr. Spivey's initial impression was cervical radiculopathy, but he also opined that "her primary problem is depression," for which she was scheduled to see Dr. Johnson. R. 212, 214. Dr. Johnson's impression, meanwhile, at visits in February, March, and May of 2009, was that Plaintiff was suffering from "situational depression," anxiety, and joint pain. R. 222-23. Plaintiff then sought treatment for depression at Pineland Mental Health in April of 2009, where she was prescribed medication

and continued to receive periodic treatment until March of 2010.[7] R. 225-26, 250-51, 255-56. Contrary to Plaintiff's assertion, none of the providers cited above made *any* finding about the duration of the conditions they diagnosed, let alone one clear enough to suggest that Plaintiff had specific restrictions for a period of twelve consecutive months before September 30, 2008. Cf. Boyd, 704 F.2d at 1210 (treating physician's opinion that explicitly stated the plaintiff had "certainly" been disabled since 1972, even though based on treatment beginning in 1977, was still entitled to significant weight when considering the plaintiff's condition before insured status expired in 1975).

Indeed, Plaintiff ultimately asserts that "each of the treating physicians *reference that the complaints as stated* have existed for a period of time prior to [Plaintiff's] date last insured." Pl.'s Br., p. 8 (emphasis added). This too, however, is largely lacking in support from the medical records. Only Dr. Spivey made any comment about how long Plaintiff reported she had been suffering from her symptoms – pain, numbness, swelling, and stiffness bilaterally in the arm, wrist, hand, thigh, knee, and foot – noting that they had "been present for 6 years." R. 212, 215. In her brief, however, the Commissioner observes that "this appears to be Plaintiff's own subjective report rather than any diagnostic finding." Comm'r's Br., p. 8. As the ALJ correctly noted, "[a] 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such

---

[7]The Commissioner does not dispute whether records from Dr. Spivey or Plaintiff's treatment providers at Pineland Mental Health are treating physicians' opinions. See Comm'r's Br., pp. 7-8. The Court observes, however, that a majority of the records from Pineland Mental Health are actually signed by Jeffrey T. Frey, a physicians' assistant. R. 225-26, 250, 255-56. The opinions of physicians' assistants are not entitled to the same weight as those of treating physicians. See Lawton v. Comm'r of Soc. Sec., 431 F. App'x 830, 833-34 (11th Cir. 2011) (*per curiam*).

10

an impairment." R. 32 (quoting SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996)). While Dr. Spivey recited Plaintiff's report of the duration of her symptoms, he made no medical findings concerning the duration of any of Plaintiff's actual impairments. See R. 212-17. Therefore, because none of the opinion evidence cited by Plaintiff contains any medical findings concerning her condition before her date last insured, the evidence was simply not relevant.

Moreover, while the ALJ did not refer explicitly to this evidence in rejecting it, the Eleventh Circuit has clarified that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*)) (punctuation omitted); McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

Here, the ALJ's decision does not broadly reject Plaintiff's application such that the Court cannot determine that he considered her medical condition as a whole. To the contrary, the ALJ's decision provides a thorough discussion of the scant medical evidence from the relevant time period, as well as the testimony of Plaintiff and her daughter about that period. See R. 30-32. Indeed, the ALJ made clear that he reviewed the evidence post-dating Plaintiff's date last insured, even though he rejected it, as he observed that the medical evidence of record indicated "no complaints or diagnosis related to a mental impairment

11

prior to early 2009," and that "recent medical evidence and the claimant's testimony indicate she complained of and began to receive treatment for depression on February 24, 2009[.]" R. 31, 32.

Accordingly, Plaintiff's contention that the ALJ erred in rejecting this irrelevant evidence when making his severity determination at step two lacks merit. See Lofgren, 2008 WL 1323396, at *2.

### B. ALJ Properly Evaluated Testimony of Plaintiff and her Daughter

Plaintiff's second argument, which overlaps a great deal with her first, is that the ALJ also erred in his consideration of the testimony of Plaintiff and her daughter in making his severity determination at step two of the sequential evaluation process. Pl.'s Br., pp. 8-11. The Commissioner responds that the ALJ made proper credibility determinations and articulated adequate reasons for discrediting the testimony of both Plaintiff and her daughter. Comm'r's Br., pp. 5-7. The Commissioner again has the better argument.

With respect to Plaintiff's testimony, the Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a

specific credibility finding." Foote, 67 F.3d at 1561-62.

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[8] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.

Dyer, 395 F.3d at 1210-11 (internal quotation marks and citations omitted).

Here, the ALJ's written decision clearly reflects the Holt analysis was appropriately followed when reaching the conclusion that Plaintiff's subjective complaints were not credible to the degree alleged. R. 19-20. The ALJ addressed each prong of the Holt analysis as described above, and substantial evidence in the record supports his findings. First, the ALJ acknowledged that there was evidence of an underlying medical condition constituting a medically determinable impairment: chronic left foot pain. R. 29, 30. Having addressed the first prong of Holt, the ALJ went on to evaluate Plaintiff's allegations of the severity of her symptoms stemming from that impairment. The ALJ reviewed the medical evidence of record, and found that Plaintiff's medically determinable impairment could reasonably be

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment. R. 30.

Plaintiff testified at the hearing that, for an unspecified period before September 30, 2008, she needed assistance completing some housework activities such as moving the lawn mower, vacuuming, and grocery shopping, and that she "just didn't want to do nothing but stay at the house." R. 50. The ALJ noted, however, that the medical evidence pertaining to the relevant time period solely concerned foot pain and a sore throat and fever. R. 30-31. Specifically, the ALJ observed that Plaintiff complained of left foot pain to Dr. Reagin at multiple visits between June of 2006 and November of 2007, but that Dr. Reagin declined to take X-ray imaging of Plaintiff's foot. R. 30. (citing R. 204-210). The ALJ also observed that Plaintiff sought care for a sore throat and fever from Dr. Johnson in June of 2002, which was diagnosed as pharyngitis. R. 31 (citing R. 232). The ALJ found that Plaintiff's physicians did not impose any limitations on her as a result of these conditions, and that Plaintiff did not allege at the hearing that she suffered any limitations because of foot pain or pharyngitis. R. 32.

Plaintiff contends, however, that the ALJ failed to properly consider her subjective complaints of the limitations imposed by her depression. See Pl.'s Br., p. 9. She asserts that her testimony at the hearing was "focused on the time period before September 30, 2008" and indicated "her severe depression" during that time.[9] Id. Yet the ALJ explicitly stated

---

[9]Notably, however, the majority of Plaintiff's testimony at the hearing was not clearly "focused" on the time before September 30, 2008. Rather, Plaintiff testified that she did not begin seeking treatment for depression until she saw Dr. Johnson "around New Year's" in

14

in his explanation of why he was not crediting Plaintiff's testimony about her "limited daily activities" that "[t]he medical evidence of record indicates [] no complaints or diagnosis related to a mental impairment prior to early 2009." R. 31.

In sum, the ALJ noted Plaintiff's testimony, but discredited it in light of "the relatively weak medical evidence" in the case. R. 31. In other words, the ALJ discredited Plaintiff's testimony about her depression because it was simply not corroborated by any medical evidence pertaining to the relevant time period. To that end, while Plaintiff contends that the records of Dr. Spivey and Dr. Johnson "provide sufficient objective medical evidence for these complaints [of depression] prior to her date last insured," Pl.'s Br., p. 10, that contention is without merit because neither of those providers made any medical finding concerning Plaintiff's depression before her date last insured, as discussed in greater detail supra, see Part III.A.

The ALJ reviewed Plaintiff's medical records and properly considered Plaintiff's testimony regarding her symptoms under the Holt standard. Taken in total, it is apparent that the ALJ rejected Plaintiff's subjective complaints concerning her alleged limitations after thoroughly evaluating the evidence in the record. Clearly articulated credibility findings such as these, which are supported by substantial evidence, will not be disturbed by a reviewing court. Foote, 67 F.3d at 1562.

As for Plaintiff's daughter's testimony, according to the Social Security regulations,

---

2009, and, despite specific questioning from the ALJ about the dates she was suffering from depression, Plaintiff was largely unable to provide a specific time frame. See R. 47-52. Indeed, because Plaintiff was having so much trouble with dates, her attorney asked to have Plaintiff's daughter testify to "clarify some of the dates of treatment." R. 52.

15

the only sources "who can provide evidence to establish an impairment" are licenced physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. 20 C.F.R. § 404.1513(d). However, the ALJ may use the observations of a relative when evaluating the severity of a claimant's impairments and how they affect her ability to work. Id. (allowing consideration of evidence from "other sources," including "relatives," to evaluate severity of impairment and impact on ability to work). Moreover, as the ALJ correctly noted, R. 31, opinion testimony from these sources is to be evaluated based on "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 WL 2329939, at *6 (August 9, 2006); see also Eskridge v. Astrue, 569 F. Supp. 2d 424, 439 (D. Del. 2008) ("The ALJ must consider whether opinions from non-medical sources, such as spouses, other relatives, friends, employers, and neighbors, are consistent with the objective medical evidence.") (internal quotation marks and citation omitted).

Plaintiff's daughter testified at the hearing that she visited Plaintiff almost daily in 2008, and that Plaintiff "had depressive symptoms for a while" and "steadily declined" after the death of her mother, which Plaintiff had earlier testified was in July of 2008. R. 47, 53. Plaintiff's daughter further testified that she knew her mother had sought treatment for her depression from Dr. Johnson, but that "the year escape[d]" her, and she "want[ed] to say" it was in 2008. R. 55.

The ALJ noted this testimony and stated that he found Plaintiff's daughter "generally credible" in her statements. R. 31. The ALJ stated that he only afforded her testimony

16

"slight" weight, however, because she was "not a disinterested, objective third party" and because there were "notable inconsistencies between the activity reported by [Plaintiff's daughter] and the medical evidence in record." Id. In particular, the ALJ noted that, in contrast to Plaintiff's daughter's equivocal testimony about when her mother sought mental health treatment from Dr. Johnson, the medical records clearly showed that Plaintiff did not seek treatment from him until February of 2009. Id.

In short, the ALJ properly evaluated Plaintiff's daughter's testimony based on its "consisten[cy] with other evidence of record," crediting it to the extent it was consistent with the scant medical evidence, and rejecting the portion that was contradicted by Dr. Johnson's treatment records and otherwise unsupported by any objective medical evidence. As she did with respect to her own testimony, Plaintiff contends that Dr. Spivey's and Dr. Johnson's medical records "provide sufficient objective medical evidence" to corroborate Plaintiff's daughter's testimony about Plaintiff's depression. Pl.'s Br., p. 10. As discussed supra, however, neither of those providers made any medical finding concerning Plaintiff's depression before her date last insured, see Part III.A, and their records thus do nothing to corroborate Plaintiff's daughter's testimony about any depression Plaintiff may have suffered during that time. The ALJ thus fully complied with the applicable legal standards for evaluating this testimony, and his credibility finding with respect to Plaintiff's daughter is supported by substantial evidence.

In sum, the Court is mindful that Plaintiff's burden to establish the existence of a severe impairment or combination of impairments is not a heavy one. See McDaniel, 800 F.2d at 1031. Here, however, Plaintiff simply failed to carry that burden, and the ALJ's

17

determination that Plaintiff did not have a severe impairment or combination of impairments during the relevant time period is supported by substantial evidence. Therefore, the Court finds that there is no basis for reversal or remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 25th day of June, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE